Fry, *alias* Williams, *vs.* The State of Georgia.

1. In his statement to the jury, the accused having imputed to his wife the use of words which may have been the provocation upon which he acted in giving her the mortal blow, the court was warranted in charging upon the insufficiency of words as provocation according to section 4325 of the code, and in commenting upon and explaining the import of the section to the jury.

2. If the wife, merely to irritate, vex and insult her husband, told him he was not the father of their children, and he,' provoked by her words and the animus with which they were uttered, killed her, though in a sudden heat of passion, it was murder.

3. If in good faith he believed her declaration to be a truthful confession of her infidelity, and in a sudden transport of passion consequent upon the discovery, he instantly killed her, whether with this origin the homicide would or might be only voluntary manslaughter, is not a question now for decision, the same not having been made in the motion for a new trial or in the bill of exceptions. Moreover, the accused did not say or suggest in his statement that he believed what his wife said and acted upon that belief.

4. That the wife was unchaste or otherwise a bad woman would certainly not justify the homicide, nor would it, in the absence of a sudden heat of passion resulting from adequate cause, tend to reduce the homicide below the grade of murder.

5. Whilst the charge of the court refers to some irrelevant matters, such as self-defence, reasonable fear, etc., the verdict being correct, these irrelevancies were harmless, and are not cause for a new trial.

6. It is legally true, and the jury may be so instructed, that the responsibility is upon them to recommend or forbear to recommend imprisonment for life in lieu of capital punishment, and that to do what they think right and proper in that regard rests with them and their consciences.

December 10, 1888.

Criminal law. Prisoner's statement. Charge of court. Murder. Verdict. New trial. Jury and jurors. Before Judge BROWN. Cobb superior court. March adjourned term, 1888.

Reported in the decision.

J. E. MOZELY and J. Z. FOSTER, for plaintiff in error.

CLIFFORD ANDERSON, attorney-general, by brief, and GEORGE F. GOBER, solicitor-general, for the State.

BLECKLEY, Chief Justice.

On Sunday morning, Fry killed his wife by stabbing her in the neck. They occupied a room ad-

joining one occupied by her parents. No unusual noise was heard by the inmates of the adjoining room, until Mrs. Fry, after receiving her wounds, gave the alarm. She lived only about half an hour. He walked away, and to persons who talked with him or heard him talk, he admitted that he had done the deed, and they saw in his hands the bloody knife. To one of them he assigned as the reason of his act that she had been cursing and quarrelling, or fussing and quarrelling. In his statement to the jury at the trial, he recounted a.long story, indicating that he was a victim of jealousy. His account of what occurred on the morning of the homicide was as follows:

"I got up, and she was out in the yard sweeping. She had dressed both children. I called to the children, and she said to them, 'Don't go to that nigger, such a nigger as that isn't pa to you.' I said, 'that's a nice way to talk; some one might come along and hear you say that and they would believe it, and if they didn't believe it, it wouldn't do for you to say that.' She replied, 'You are no daddy to them children; they don't favor you, and you are not their father.' I said, 'Don't you tell me that any more, and let this be the last time you tell it; if I am not the father, you needn't tell me so; you have kept it hid this long, and you can keep it hid longer.' She said, 'I have told you enough, that you are not their father.' I said, 'You needn't say that any more; I don't want to hurt you and don't want to injure you in any way, and won't do it if I can help it.' She came on in the house then, and cooked a little something to eat, and set down and went to eating. I put on my clothes. She never fixed anything for me to eat, and I said to her, 'You never put me a plate on the table; what kind of a way is this you have of doing? You get up and start off about telling me I wasn't their father, and getting me mad, and you haven't fixed me no breakfast.' She said, 'I don't reckon you need any breakfast'; and I said, 'What do you mean by telling me I wasn't their father? Do you mean what you said?' And she said, 'Certainly I do'; and I was that mad that I cut her. I was madder than I ever was in my life, and at the time I didn't have the first thought at all."

There was no evidence to establish this colloquy except the statement of the accused. Touching the statement, the court instructed the jury that they might be-

lieve it absolutely, but were not bound to give it any sort of credit; that they were to weigh and consider it in the light of all the facts and circumstances, and if they thought it entitled to credit, they should give it that much and no more.

The jury found the accused guilty of murder, and the court sentenced him to death. He moved for a new trial on the general grounds, and because the court erred in giving in charge to the jury section 4325 of the code, respecting voluntary manslaughter. Also, in charging upon that section, in substance, as follows : " Provocation by words, threats and contemptuous gestures are by the very terms of our code insufficient. Words used by one party to another will not justify a killing ; words, as many as a person pleases to use, are no justification. Provocation by words or threats is not sufficient to reduce a killing from murder to manslaughter, because the statute expressly says so."

1, 2. In the evidence there was absolutely nothing to support or suggest the theory of manslaughter ; all that gave the slightest color to that theory was the prisoner's statement; and that statement consisted in part of the repetition of words alleged to have been used by the deceased just preceding the killing. The section treats of words as provocation, and declares them insufficient. What more was needed to render so much of the section appropriate as an instruction to the jury, than the fact that the accused brought into the case the words of his wife, and urged them as a defence? Perhaps they were not the whole of his defence, but certainly they were a part of it, and that they were not sufficient in law to reduce the homicide to manslaughter is not only true, but as the court said, is matter of express statutory enactment. The complaint is, that by giving the section in charge, together with the comment or amplification set

out above, the court, in effect, excluded from the jury the statement of the prisoner and the evidence corroborating it. We fail to see that this consequence followed. The jury were distinctly instructed to consider the statement, the whole of it, and to give it such credit as they thought it deserved. We have quoted enough from the statement to show that it consisted in part of exasperating words attributed to the wife. If she used them merely to irritate, vex and insult her husband, and he, provoked by them and by her animus in uttering them, killed her, though in a sudden heat of passion, his offence was murder.

3. According to the argument made here, a distinction was drawn in the mind of the counsel, between words as provocation, and the sudden discovery of the fact which the words communicated. It was thought by counsel that the case was not one of provocation by words, but of provocation by conduct confessed by the wife; and therefore, that the charge of the court was erroneous. But no such distinction was made at the trial, so far as we can learn from the record. There was no request to charge the jury in accordance with that view, and no exception was taken that the court omitted so to charge without request. The complaint made in the motion for a new trial was, that the court erred in its charge; not that it failed to charge either with or without request; and hence, although it may or may not be true that, treating conduct rather than words as the provocation, the homicide might be reduced to manslaughter, yet as the question was not made, it is not before us for decision.

4. There can be no doubt that the substance of the charge, respecting the wife as an unchaste or bad woman, was sound law (see 4th head-note)

5. The charge contained some irrelevant matters,

but as the verdict was correct, they were harmless (see 5th head-note).

6. In charging the jury upon their right to recommend imprisonment for life in lieu of capital punishment, the court told them, in substance, that the whole matter was with them, that the responsibility was upon them to make the recommendation or not to make it, and that they could deal with it as they thought right, it being a matter for themselves and their consciences. This is attacked as error, and we are cited to *Hill vs. The State*, 72 *Ga.* 131, which, we think, has no application. The court correctly informed the jury as to their power and duty, and did not do it in terms that were not appropriate or that could be misleading in any way.

There can be no two opinions of the ample sufficiency of the evidence to warrant the verdict.

Judgment affirmed.