# Commonwealth *v.* Webb, Appellant.

*Criminal law—Murder—Manslaughter—Provocation—Delibera-
tion—Premeditation—Reasonable doubt—"Character" — "Reputa-
tion"—Evidence—Photographs—Burden of proof—Charge of court.*

1. Ungoverned and uncontrolled temper is no defense to crime, and does not even reduce killing to manslaughter unless it is produced by immediate and legally sufficient provocation.

2. In charging the jury in a homicide case, the trial judge is not bound to repeat fully the general legal principles applicable to the case every time he takes up a new phase of the evidence. If the charge when interpreted as a whole is a correct and impartial presentation of the case, it will be sustained, though particular portions of it, considered alone, may not be an exact and complete statement of the law.

3. On the trial of an indictment for murder by the defendant

of his wife, it appeared that they had lived together harmoniously until the quarrel resulting in the killing; that on the night prior thereto there was a dispute between defendant and his wife as to money matters; that on the following morning the argument was resumed and during a scuffling which ensued his wife seized a poker and struck defendant on the head, and defendant then cut her five times with a razor, one of the cuts proving fatal. The fact of killing was admitted and the only question was the degree of crime. It appeared that defendant was about six feet in height and weighed 165 pounds, and that his wife was five feet seven inches in height and weighed from 200 to 250 pounds, and that the poker used by her was a small one about fifteen inches in length and a quarter of an inch in diameter. The court defined malice as follows: "As ordinarily understood, malice means spite or ill will—hatred; but in law malice means more than that. It of course does include spite and ill will, but it means where a person acts cruelly, with hardness of heart, or in reckless disregard of the consequence of the act." The court affirmed defendant's point that "an assault and battery made with violence upon a man's person, by one not greatly his inferior in strength, if it be resented immediately by the death of the aggressor, and it appears that the defendant acted in the heat of blood upon that provocation without malice, will reduce the crime to manslaughter." Held, the court did not err in the portion of the charge referred to and a verdict of guilty of murder of the first degree was sustained.

4. In such case the trial judge did not err in defining the elements of first degree murder in charging that "wilful means an intentional act. Deliberate means the weighing of the facts with a view to rendering a decision, and premeditation means thinking about and forming a design or purpose before the commission of an act," and further that murder is a "homicide committed with malice, being perpetrated wilfully, deliberately and premeditatedly. If those elements exist then the crime is murder in the first degree. If they do not exist, but the killing still was committed with malice, in accordance with the definition I have given you, it is murder of the second degree," especially as the immediately following part of the charge amply defined manslaughter, and defendant's point defining manslaughter was affirmed.

5. In such case where the commission of the crime was not denied, the only question being its degree, the trial judge did not err in calling the jury's attention to circumstances tending to discredit defendant's statement relied upon by him to show such provocation as would reduce his offense to a lower degree of crime, and the jury were properly permitted to draw inferences from

facts stated in defendant's confession as well as from the facts proven by other evidence.

6. Where on the trial of a homicide case the court charged that "a reasonable doubt is that which would cause an ordinary person to hesitate about taking action upon any important affair of life," defendant's contention that the court should have included a statement that the term "affair of life" meant affair in his own life and not in the lives of others, is unwarranted particularly where the trial judge in the immediate context clearly illustrated the application of his definition of reasonable doubt.

7. In a homicide case where defendant had introduced character evidence the court did not err in charging that "reputation is the repute in which a man is held by his neighbors, and is a different thing from character altogether, and a man may have a bad character at heart, and his associates may not actually have known the fact......Such testimony is not a contradiction of facts and is not offered for that purpose. The purpose is to show, first, that the man's reputation for peace and good order is good, and that, therefore, he would not be likely to commit the offense with which he is charged. It is not a denial of positive proof," especially where the court further instructed the jury that evidence of good reputation may in itself be sufficient to raise a reasonable doubt of guilt. The word character is frequently used interchangeably with the word reputation and in a legal sense it means reputation as distinguished from disposition.

8. In such case where the court stated that the duty of the jury was merely to pass on the evidence as presented and base a verdict thereon, regardless of the consequences of the verdict, defendant's contention that this amounted to a suggestion that a verdict of guilty was expected by the court, is without merit.

9. On the trial of a murder case a photograph of the place where the crime was committed was properly admitted for the purpose of showing the existence of blood stains, where it was proven and identified by the person who took and developed it, and there was evidence that the condition of the room was the same about the time the crime was committed and the time such photograph was taken.

Argued Oct. 25, 1915. Appeal, No. 246, Oct. T., 1915, by defendant, from judgment of O. T. Allegheny Co., May Sessions, 1915, No. 24, on verdict of guilty of murder of the first degree in case of Commonwealth v. Henry J. H. Webb. Before BROWN, C. J., MESTREZAT, POTTER, MOSCHZISKER and FRAZER, JJ. Affirmed.

Indictment for murder.    Before SWEARINGEN, J.

The opinion of the Supreme Court states the case.

Verdict of guilty of murder of the first degree on which judgment of sentence was passed.    Defendant appealed.

*Errors assigned* were various instructions to the jury and the ruling on evidence referred to in the opinion of the Supreme Court.

*Thomas F. Garrahan,* for appellant.

*Homer N. Young,* Assistant District Attorney, with him *R. H. Jackson,* District Attorney, for appellee.

OPINION BY MR. JUSTICE FRAZER, January 3, 1916:

Defendant was indicted for the murder of his wife. They were married in June, 1914, and lived harmoniously together in the City of Pittsburgh until the quarrel which resulted in the death of his wife. On Saturday evening, February 20, 1915, when defendant returned home from his work, according to his testimony, his wife complained of the amount of money she was receiving from him and demanded a greater sum. Defendant offered her two dollars, saying that amount was all he had received that evening from his employer, and left the house, returning about midnight, when the discussion of the money question was resumed and continued until they retired for the night. In the morning the wife renewed her demands for money and threatened to leave defendant for another man, who, she claimed, would provide her with more money than defendant was giving her. This was followed by angry words and scuffling during which the wife seized a poker and struck the defendant on the head, and in the fight which followed defendant cut his wife five times with a razor which he took from a shelf in the room. Four of the cuts were superficial, but the other, a deep one on the

neck, caused her death. Immediately after the cutting defendant left his home and went to the house of a cousin some distance away, where he changed part of his clothing and left the city. His arrest followed a few hours later. The jury returned a verdict of first degree murder and from the judgment and sentence which followed defendant took this appeal.

The first assignment of error complains of that part of the charge in which the court defined malice as follows: "As ordinarily understood, malice means spite or ill will—hatred; but in law malice means much more than that. It of course does include spite and ill will, but it means where a person acts cruelly, with hardness of heart, or in reckless disregard of the consequence of the act." The particular objection to this definition is, since the defense was that defendant acted under the influence of passion which temporarily obscured his reason, which defense, if proven, would have reduced the crime to manslaughter, the court should have included in its definition a consideration of the condition of mind of defendant at the time, so as to indicate the distinction between murder and justifiable homicide or manslaughter. Defendant contends the use of the poker by his wife was sufficient provocation to arouse his anger and passion to such extent as to obscure his reason. It appears from the evidence he is about six feet in height and weighs some 165 pounds. His wife was five feet seven inches in height and weighed from 200 to 250 pounds. The poker used by her was a small one about 15 inches in length and a quarter of an inch in diameter, with coiled wire at one end, used as a handle. While it is true defendant stated the blow on his head caused a swelling, the fact that no mark was apparent later in the day, together with the kind of weapon used, shows conclusively that the injury he received could not have been a very serious one. An attack by a woman with a weapon of this nature on a man of the physical strength of defendant would not seem to be, in itself, sufficient

provocation to excuse the use of a deadly weapon: Commonwealth v. Mosler, 4 Pa. 264. Neither is such provocation sufficient excuse to create the irritation and passion necessary in a reasonable being to reduce homicide to the grade of manslaughter. The adoption of such a rule would put a premium on uncontrolled temper and would, in effect, hold that one whose disposition is unusually excitable .or quarrelsome, or who has less will power and self-control than persons usually possess, should be kept to a less strict accountability for his acts than the more moderate and evenly-balanced citizen. Such a rule would also permit the setting up of the doctrine of "transitory frenzy" as a defense in a murder case, thus giving effect to what this court has heretofore described as nothing but vindictive and reckless temper: Commonwealth v. Renzo, 216 Pa. 147, 149. "Ungoverned and uncontrolled temper is no defense to crime, and does not even reduce killing to manslaughter, unless it is produced by immediate and legally sufficient provocation": Commonwealth v. Eckerd, 174 Pa. 137, 150. The failure to include a definition of manslaughter could not have harmed defendant, especially as his rights were fully protected by the affirmance, at the end of the charge, of defendant's second point that, "An assault and battery made with violence upon a man's person, by one not greatly his inferior in strength, if it be resented immediately by the death of the aggressor, and it appears that the defendant acted in the heat of blood upon that provocation without malice, will reduce the crime to manslaughter." And also by the affirmance of the third point, which was that "By provocation is meant in law that treatment of one person by another which arouses anger and passion, and adequate provocation is such as would naturally tend to disturb and obscure the reason and lead to action from passion, rather than judgment, or to create anger, rage, sudden resentment or terror, rendering the mind incapable of reflection, and if the jury find that adequate provocation

was given or existed in this case, and the fatal blow
was struck by defendant without malice and while in
sudden rage and under the influence of said provocation,
the verdict of the jury could not be for a higher degree
of crime than manslaughter."

The second assignment of error complains of that por-
tion of the charge which defines the elements of first
degree murder. The trial judge stated, "Wilful means
an intentional act. Deliberate means the weighing of
the facts with a view to rendering a decision, and pre-
meditation means thinking about and forming a design
or purpose before the commission of an act." He fur-
ther stated that murder is a "homicide committed with
malice, being perpetrated wilfully, deliberately and pre-
meditatedly. If those elements exist, then the crime is
murder in the first degree. If they do not exist, but the
killing still was committed with malice, in accordance
with the definition I have given you, it is murder of the
second degree." The principal complaint is that this
definition did not go far enough, in that nothing was
said about the time necessary for premeditation to select
the instrument and carry out the intent to kill, or that
the intention must be accompanied by circumstances
showing a mind fully conscious of its purpose and de-
sign. These objections we think are overcome by state-
ments of the trial judge in other parts of the charge.
Immediately following the language above quoted he
said if the homicide was committed without malice, in
the heat of blood, the crime would be manslaughter. It
was also stated by affirmance of defendant's seventh
point, "In order to convict of murder in the first degree,
the jury must find beyond a reasonable doubt that the
defendant had a fully formed purpose to kill, which
purpose was persisted in up to the time the fatal blow
was struck; that his mind at that time was capable of
deliberation and premeditation, and that there was suffi-
cient time for deliberation and premeditation; that said
purpose was not the offspring of rashness and impetuous

temper, and that the prisoner's mind at the time was fully conscious of its own design." We see no error in this assignment.

The third, fourth and ninth assignments complain that the court did not give the confession of defendant the effect to which it was entitled as evidence, or call attention to the rule that a confession must be offered as a whole and given full effect as such and the parts favorable to defendant considered, as well as those unfavorable to him. While a confession must be admitted and construed as a whole, the Commonwealth is not precluded from contradicting any part of it, Commonwealth v. Shaffer, 178 Pa. 409, and the jury were properly permitted to draw inferences from the facts stated in the confession, as well as from the facts proven by other evidence. The trial judge was therefore within the law when he called the jury's attention to the circumstances tending to discredit defendant's statements relied upon by him to show such provocation as would reduce his offense to a lower grade of crime. The commission of the crime itself was not denied, the only question being its degree. The confession was offered and received as a whole, and there was other testimony in the case covering specifically all matters referred to therein. The comments made by the court were fairly justified by the circumstances of the case.

The fifth assignment of error questions the correctness of the language of the trial judge in stating, "A reasonable doubt is that which would cause an ordinary person to hesitate about taking action upon any important affair of life." Defendant argues the court should have included a statement that the term "affair of life" meant affair in his own life and not in the lives of others, since a person may act upon matters important to others and yet hesitate to adopt the same course in his own affairs. This objection seems hypercritical. Besides, the trial judge in the immediate context clearly illustrated the application of his definition of a reasonable

doubt to the facts in the case, and fully protected defendant's rights. The trial judge is not bound to repeat fully the general legal principles app'icable to the case every time he takes up a new phase of the evidence: Commonwealth v. Deitrick, 221 Pa. 7. If the charge when interpreted as a whole is a correct and impartial presentation of the case, it will be sustained, though particular portions of it, considered alone, may not be an exact and complete statement of the law: Commonwealth v. Deitrick, supra.

In the sixth assignment of error defendant makes complaint of that portion of the general charge which refers to the evidence of reputation and the distinction between reputation and character. As to this, the trial judge said: "You will bear in mind that reputation is not character. Reputation is the repute in which a man is held by his intimates, associates, friends and neighbors, and therefore a man may have a bad character, but still may have a good reputation, because his neighbors may not know of his real character. Now, if you find from the evidence that the defendant's reputation for peace and good order was good, that may, of itself, raise in your minds a reasonable doubt. But you must bear in mind that such testimony is not a contradiction of facts, and it is not offered for that purpose. The purpose of testimony of that kind is to show, first, that the man's reputation for peace and good order is good, and that, therefore, he would not be likely to commit the offense with which he is charged. That is the purpose of it. It is not a denial of positive proof. But it is used for the purpose stated, and that solely and alone; and therefore is to be considered in that light and in that light alone, and that is the only purpose for it. As I said to you before, reputation is the repute in which a man is held by his neighbors, and is a different thing from character altogether, and a man may have a bad character at heart, and his associates may not actually have known the fact." While the language used is unnecessarily re-

strictive in so far as its general purpose and effect is concerned, we cannot say it warrants a reversal of the case. The word character is frequently used interchangeably with the word reputation. In a legal sense it means reputation as distinguished from disposition. Character grows out of particular acts, but is not proved by them, inasmuch as a person may under the stress of special circumstances do a thing which is contrary to his ordinary disposition and practice. The method of proving character is by showing the general reputation of the person in the neighborhood in which he lives. What is proven, therefore, is not a person's real character, but his character as reputed among his neighbors, or what the consensus of opinion of the neighbors is as to his character. The trial judge did not, therefore, err in his general definition of the word reputation. He also instructed the jury that evidence of good reputation may in itself be sufficient to raise a reasonable doubt of guilt. The fact that he further told them evidence of reputation is not a contradiction of facts or denial of positive proof, was merely an instruction to the effect that if an act was shown to have been done by defendant, the fact that his reputation was good would not rebut the existence of such fact. This follows the rule laid down in a number of cases to the effect that if the jury is satisfied beyond a reasonable doubt under all the evidence, including evidence of good character, of the guilt of defendant, evidence of character may not overcome the conclusion which follows from that view of the case: Commonwealth v. Eckerd, 174 Pa. 137; Commonwealth v. Harmon, 199 Pa. 521; Commonwealth v. Aston, 227 Pa. 106.

In the seventh assignment defendant contends the trial judge erred in stating to the jury in effect that its duty was merely to pass on the evidence as presented and base a verdict thereon, regardless of the consequences of the verdict, as to which they had nothing to do. It is argued this amounted to a suggestion that a verdict of

guilty was expected by the court.   There is no merit in this contention.   A statement of this kind was made by the trial judge and affirmed by this court in Coyle v. Commonwealth, 100 Pa. 573.

In the eighth assignment of error it is complained the trial judge charged that if the jury found defendant committed murder "wilfully, deliberately and maliciously as defined to you before, then you will return a verdict of murder of the first degree."   Defendant contends the omission of the word "premeditated" was error, as it omitted an important element of first degree murder. The court below, in an opinion on motion for new trial, stated he was "satisfied that the word used was 'premeditatedly,' and that the stenographer mistakenly wrote 'maliciously.'"   However this may be, the court in other parts of the charge repeatedly used the phrase "wilful, deliberate and premeditated," and again in affirming the seventh point as quoted above.   In view of these frequent expressions, the failure of the court to repeat precise legal definitions of the elements of murder in the first degree, in reply to the request for further charge on another feature of the case, is not sufficient ground for reversal: Commonwealth v. McManus, 143 Pa. 64; Commonwealth v. Buccieri, 153 Pa. 535.

There is no merit in the tenth assignment of error, which complains the trial judge presented the strong features of the Commonwealth's case and ignored those of defendant's.   The charge as a whole was a fair presentation of the case, and the trial judge was within his rights in commenting on the testimony, and even in expressing his own opinion thereon, so long as the jury were left free to act upon their own views of the evidence: Johnson v. Commonwealth, 115 Pa. 369; Com. v. Orr, 138 Pa. 276; Com. v. Buccieri, 153 Pa. 535.   If counsel for defendant thought the trial judge omitted material features of the defense, it was their duty to call his attention to the omission at the end of the charge: Commonwealth v. Washington, 202 Pa. 148.

The eleventh assignment relates to the charge of the

court and claims it was inadequate in failing to present to the jury the legal definitions and constructions of the elements relating to murder of the first degree, and in failing to charge that the burden of establishing those elements rested upon the Commonwealth. This is fully answered in the discussion of the second assignment above, and by the affirmance of defendant's fifth point which was that, "In harmony with the humane principles of criminal law, that every person accused of crime shall be presumed innocent until his guilt is clearly established, it is incumbent upon the Commonwealth to prove, not only to the satisfaction of the jury, but beyond a reasonable doubt, the presence of every ingredient necessary to prove the crime charged in the indictment. That burden never shifts, but rests upon the prosecution throughout, so that in all cases a conviction can only be had after the jury has been convinced beyond a reasonable doubt of the defendant's guilt, and if any necessary ingredient is not established beyond a reasonable doubt, the defendant is entitled to the benefit of that doubt."

The twelfth assignment relates to the action of the court in admitting, over objection, a photograph of the place where the crime was committed. The offer was to show the existence of certain blood stains, and defendant contends there was no proof the conditions were the same at the time the picture was taken as at the time the crime was committed. It appears the photograph was proved and identified by the person who took and developed it, and was further identified by other witnesses. There is also evidence that the condition of the room was the same about the time the crime was committed and the time the photograph was taken. Under these circumstances there was no error in admitting it: Beardslee v. Columbia Township, 188 Pa. 496; Commonwealth v. Swartz, 40 Pa. Superior Ct. 370.

The assignments of error are all overruled, the judgment is affirmed, and the record is remitted for purpose of execution.