**7 P.(2d) 933**

**STATE v. NEVARES.**

No. 3690.

Supreme Court of New Mexico.

Jan. 27, 1932.

Holt & Holt, of Las Cruces, for appellant.

E. K. Neumann, Atty. Gen., and Q. D. Adams, Asst. Atty. Gen., for the State.

SADLER, J.

The appellant was convicted of murder in the second degree and appeals. Under a plea of not guilty, he made the defense of emotional insanity. Conflicting evidence upon the question of appellant's sanity was introduced, and it is not urged that the verdict, necessarily resolving this issue against appellant, is without substantial support in the evidence.

The first point relied upon for reversal is a claimed abuse of discretion by the trial court in refusing to reopen the case, after both sides had rested, to permit appellant to introduce testimony relative to a statement claimed to have been made by an expert witness for the state, Dr. Paul Ely McChesney, shortly after leaving the stand, urged to be contradictory of testimony of this witness given on the stand. Upon denial of this motion, it was again moved to reopen the case for purpose of permitting the recall of Dr. McChesney for cross-examination. This motion likewise was denied, and an exception saved to both rulings.

It appears from the offer made by appellant that, upon leaving the stand shortly before noon, the witness, while in the clerk's office

procuring warrant for attendance, was accosted by the reporter for a local newspaper, between whom and the witness the following colloquy took place, to wit:

"Miss Shipe: Doctor McChesney I am sorry I did not get in to hear your testimony, but of course as you are testifying for the State, I can imagine what it was." To which Dr. McChesney replied: "He is not insane." That Miss Shipe replied, in substance, "I expected as much," and then further said to the doctor, in substance, "Doctor of course this case is up to the jury, and we don't decide it, but between you and I, you say he isn't insane; do you consider him normal?" To which inquiry Doctor McChesney replied: "No."

Upon arrival of the noon hour following the testimony of this witness, and before appellant's counsel or the court knew of the occurrence in the clerk's office, the trial judge had recessed court until 5 p. m. for the purpose of preparing the court's instructions. Court did not actually reconvene until 8:50 p. m. that evening. At this earliest opportunity, counsel for appellant presented the two motions aforesaid. Upon their denial, the instructions of the court were read to the jury, which required until 11:45 p. m., and adjournment was then had until the following Monday morning.

The witness, Dr. McChesney, had testified on his direct examination that the mental examination of appellant was negative, "that is showed no abnormal findings, except the lapse of memory for two occasions," and had further testified to the belief that appellant was not insane. He further gave his opinion as

an expert based on the facts presented that appellant's mind was not so far affected with insanity at the time of the homicide as to render him incapable of distinguishing between right and wrong in respect to the killing.

Such was the situation at the trial when appellant's counsel asked leave to reopen the case for the purposes aforesaid. It was, of course, within the court's broad discretion to have granted the motion and permitted this effort at impeachment. The field of discretion, however, is just as broad in one direction as in the other. Although counsel for appellant moved with dispatch upon learning of the expert's out of court statement, and the witness' discharge was attributable to no act of theirs, the fact remains that he then had returned to El Paso, Tex., and must have been brought back to Las Cruces to testify. Furthermore, appellant had waived cross-examination of this witness while on the stand. It is entirely probable that under the cross-examination which able counsel for appellant were capable of giving, had the right been availed of, the fact that the witness did not consider appellant normal would have been developed, with such resultant benefit, if any, as a pressing of the cross-examination on that subject might bring. But mere abnormality, not amounting to insanity, if admitted, could not properly have affected the result.

Indeed, while on the stand, this expert did not give appellant's mentality an unqualified classification as normal type, though substantially so. Then, cross-examination was a mat-

ter of right of which the appellant could not lawfully be deprived. Later, and under the facts here disclosed, it became a matter of discretion on the part of the trial court. Under all the circumstances, we are unable to discover any abuse of that discretion in the denial of the application to reopen, in the absence of which the action of the trial court will not be disturbed. State v. Ellison, 19 N. M. 428, 144 P. 10; Hodges v. Hodges, 22 N. M. 192, 159 P. 1007; Holthoff v. Freudenthal, 22 N. M. 377, 162 P. 173; State v. Cason, 23 N. M. 77, 167 P. 283; State v. Foster, 28 N. M. 273, 212 P. 454; State v. Martinez, 34 N. M. 112, 278 P. 210.

■■ The appellant complains of the trial court's refusal to submit the issue of voluntary manslaughter. In order to have intelligent understanding of this point, it is necessary to recite briefly some of the facts surrounding the homicide as disclosed by the evidence. The appellant was a young man twenty-one years of age. The deceased, Miss Eva Smith, was a young girl eighteen years of age, a student in the high school at Las Cruces, residing with her mother and stepfather at Tortugas, about two miles below Las Cruces. The stepfather conducted a store at Tortugas in the rear of which the family resided. For something more than a year prior to the homicide the young couple had been friendly, and it is evident from the record that appellant was enamored of the deceased. An estrangement between them took place during the Christmas holidays in December, 1929, and had continued to the day of the homicide.

On April 13, 1930, the appellant appeared in a car at the home of deceased about 3 o'clock in the afternoon and requested that she go for an automobile drive with him that evening. She declined, saying she must study, and that she was through with him. He responded by saying he would see whether or not she was through with him. He drove away and about an hour and a half later reappeared and sent in a note to deceased by a younger brother. She received the note which is in evidence, and sent out to him by this brother a reply, the contents of which were never disclosed. The appellant drove away but reappeared in about ten minutes and through a brother of the deceased asked her to come out to his car, which he had stopped directly in front of the store. The deceased went out to the car, was seen to be talking to appellant for a few moments and was in the act of returning into the store having one hand on the screen door, for opening same, when appellant jumped from his car with a shotgun, rushed rapidly toward deceased and called upon her to turn toward him. As she did so, he fired directly into her left breast and she fell dead at his feet. The appellant then drove rapidly away.

It is difficult to perceive how on this state of facts an instruction on voluntary manslaughter was warranted or permissible. Counsel for appellant predicate the right to the instruction on the testimony of Alejandro Smith, a younger brother of deceased, that at the time of rushing toward her with the shotgun appellant appeared "angry." Also, that by reason of a disordered mentality, following a head injury in an automobile accident, some two years previously, he was peculiarly susceptible to emotional stress or excitation, likely to result from the circumstances immediately surrounding the homicide for which he was on trial. And the testimony of Dr. S. D. Swope, an expert witness for appellant, that such emotional stress might have been the result of sudden anger, "if anger there was in this particular case."

The defense was insanity. The appellant did not testify, but if the jury had accepted the testimony of his witnesses on the issue of insanity he would have been acquitted. Having been found not to be insane, but capable instead of appreciating and distinguishing between right and wrong in respect to the killing in question, it remains to be determined whether there is some middle ground between insanity, which will render a homicide excusable, and sanity, which renders its perpetrator accountable, within whose compass its commission will be deemed manslaughter rather than murder.

This brings us to an application of the law to the facts. Mere sudden anger or heat of passion will not reduce the killing from murder to manslaughter. There must be adequate provocation. The one without the other will not suffice to effect the reduction in the grade of the offense. The two elements must concur. McHargue v. Commonwealth, 231 Ky. 82, 21 S.W.(2d) 115; Ballard v. Commonwealth (Va.) 159 S. E. 222; Wharton's Criminal Law (11th Ed.) § 425, page 614. And words alone, however scurrilous or insulting, will not furnish the adequate provocation re-

quired for this purpose. State v. Trujillo, 27 N. M. 594, 203 P. 846.

The test of whether the provocation was adequate must be determined by considering whether it would have created the passion offered in mitigation in the ordinary man of average disposition. If so, then it is adequate and will reduce the offense to manslaughter. If not, it is inadequate. Here is shown nothing but words apprising appellant of the fact that the deceased had rejected his suit, except testimony tending to show that by reason of his peculiar, even defective, state of mind, not amounting to insanity, such knowledge likely would result in a state of excitation and anger in him, altogether not to be expected in the ordinary man of average disposition. This circumstance does not alter the rule. Wharton on Homicide (3d Ed.) § 172; King v. Lesbini, [1914] 3 K. B. 1116, 7 British Ruling Cases 272, and case note; Dean v. State, 105 Ala. 21, 17 So. 28; People v. Ortiz, 320 Ill. 205, 150 N. E. 708; People v. Hurtado, 63 Cal. 288; Garlitz v. State, 71 Md. 293, 18 A. 39, 4 L. R. A. 601; Maher v. People, 10 Mich. 212, 81 Am. Dec. 781; Keenan v. Commonwealth, 44 Pa. 55, 84 Am. Dec. 414; Small v. Commonwealth, 91 Pa. 304; Commonwealth v. Eckerd, 174 Pa. 137, 34 A. 305; Commonwealth v. Webb, 252 Pa. 187, 97 A. 189; Crews v. State, 34 Tex. Cr. R. 533, 31 S. W. 373; Hurst v. State, 40 Tex. Cr. R. 378, 46 S. W. 635, 50 S. W. 719; Fitzpatrick v. Commonwealth, 81 Ky. 357; Ryan v. State, 115 Wis. 488, 92 N. W. 271.

We agree with the soundness of the rule adopted in England and followed generally in this country, that different degrees of mental ability in prisoners who are sane cannot be taken into account for reducing a homicide from murder to manslaughter. In King v. Lesbini, supra, the court had this argument urged upon it. Lord Reading, Chief Justice, speaking for the court said: "It substantially amounts to this, that the court ought to take into account different degrees of mental ability in the prisoners who come before it, and if one man's mental ability is less than another's it ought to be taken as a sufficient defense if the provocation given to that person in fact causes him to lose his self-control, although it would not otherwise be a sufficient defense because it would not be provocation which ought to affect the mind of a reasonable man. We agree with the judgment of Darling, J., in Rex v. Alexander, supra, and with the principles enunciated in Reg. v. Welsh (1869) 11 Cox, C. C. 338, where it is said that 'there must exist such an amount of provocation as would be excited by the circumstances in the mind of a reasonable man, and so as to lead the jury to ascribe the act to the influence of that passion.' We see no reason, therefore, to dissent in any way from the principle of law on which this case was tried. On the contrary we think it is perfectly right. This court is certainly not inclined to go in the direction of weakening in any degree the law that a person who is not insane is responsible in law for the ordinary consequences of his acts."

We have heretofore held with respect to the plea of self-defense in homicide cases that the

standard by which must be determined the reasonableness of accused's belief in the apparent imminence of danger is that of an ordinary person of firmness, reason, and prudence; and that the question is not to be determined from the standpoint of the accused. State v. Chesher, 22 N. M. 319, 161 P. 1108; State v. Dickens, 23 N. M. 26, 165 P. 850; State v. Parks, 25 N. M. 395, 183 P. 433. We have also held that proof of the impaired mental condition of an accused at the time of a homicide resulting from voluntary intoxication may not be employed to reduce the grade of the offense from murder in the second degree to manslaughter, unless elements of the latter offense are otherwise present. State v. Cooley, 19 N. M. 91, 140 P. 1111, 52 L. R. A. (N. S.) 230; State v. Brigance, 31 N. M. 436, 246 P. 897.

So in the case at bar, the appellant's peculiar susceptibility to excitation, anger, or passion, even though resulting from a defective mentality, which still left him capable of distinguishing between the right and the wrong of the offense with which he stood charged, cannot aid him. He must have applied to him, for determining the adequacy of provocation relied upon, the test of its effect on the ordinary man of average disposition. Measured by this test, the correctness of the trial court's refusal to submit voluntary manslaughter is readily apparent. The appellant importuned deceased, his former sweetheart, to go driving with him. She refused and informed him she was through with him. He went away, evidently brooded, and, returning a few minutes later, slew her. It was murder, and the court properly declined to submit voluntary manslaughter. State v. Trujillo, 27 N. M. 594, 203 P. 846; State v. Luttrell, 28 N. M. 393, 212 P. 739; People v. Ortiz, 320 Ill. 205, 150 N. E 708; Braunie v. State, 105 Neb. 355, 180 N. W. 567, 12 A. L. R. 658; Commonwealth v. Russogulo, 263 Pa. 93, 106 A. 180; State v. Kotovsky, 74 Mo. 247; Fry v. State, 81 Ga. 645, 8 S. E. 308; Hill v. State, 74 Tex. Cr. R. 481, 168 S. W. 864.

Another error is assigned upon the court's action in overruling motion for new trial in view of affidavits of two jurors, attached to motion, to the effect that they were not convinced beyond a reasonable doubt of appellant's sanity, but supported a verdict of murder in the second degree in the belief that confinement in the penitentiary would furnish opportunity for future observations and tests as to his sanity. The proposition that a juror may not thus impugn his verdict is firmly established in this state. Goldenberg v. Law, 17 N. M. 546, 131 P. 499; Talley v. Greear, 34 N. M. 26, 275 P. 378; State v. Taylor, 26 N. M. 429, 194 P. 368; State v. Analla, 34 N. M. 22, 276 P. 291; State v. Mersfelder, 34 N. M. 465, 284 P. 113. We conclude that the judgment of the lower court is based upon a record free from error and should be affirmed.

It is so ordered.

WATSON and PARKER, JJ., concur.

BICKLEY, C. J., and HUDSPETH, J., did not participate.