592 P.2d 185
**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**John Eloy CASTRO,
Defendant-Appellant.**

No. 3597.

Court of Appeals of New Mexico.

Feb. 20, 1979.

Writ of Certiorari Denied March 14, 1979.

Tandy L. Hunt, Ralph D. Shamas, Hunt & Shamas, Roswell, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Michael A. Kauffman, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

SUTIN, Judge.

Defendant John Castro was convicted of voluntary manslaughter and aggravated burglary. The victim was Linda, his divorced wife. John appeals. We reverse on voluntary manslaughter and affirm on aggravated burglary.

Linda and John had been married for approximately eight years and were divorced in either August or September, 1977. The homicide was committed on October 6, 1977. John was off work at about 3:00 p. m., went home, drank two bottles of beer and had supper. While John was watching a baseball game on television, Linda called and wanted money for rent. He told her to let him alone and she said she didn't have to. Linda then used abusive language. Subsequently, John went to the store and purchased a gun and ammunition. This transaction took about ten minutes and John appeared calm. He went back home, loaded the gun, walked around for about a half hour and then walked to Linda's house. He planned on shooting her in the spine to prevent her from dancing. John saw Linda sitting on the couch watching television and knocked on the door. Linda became scared, called the police, hollered and ran toward the back bedroom. John broke the lower left hand window, unlocked the door, and

from a distance of five feet shot Linda three times and killed her.

John was charged with first degree murder and aggravated burglary. The jury returned a verdict of guilty of voluntary manslaughter and aggravated burglary, both with the use of a firearm.

### A. No evidence supported submission of voluntary manslaughter.

Section 30–2–3(A), N.M.S.A. 1978 reads:

Manslaughter is the unlawful killing of a human being without malice.

A. Voluntary manslaughter consists of manslaughter committed upon a sudden quarrel or in the heat of passion.

*Smith v. State,* 89 N.M. 770, 772, 558 P.2d 39, 41 (1976) says:

It follows logically and obviously from the definition that, in order to convict of voluntary manslaughter, the jury must have evidence that there was a *sudden quarrel* or heat of passion *at the time of the commission of the crime* (in order, under the common law theory, to show that the killing was the result of provocation sufficient to negate the presumption of malice; see, e. g., R. Anderson, Wharton's Criminal Law and Procedure § 242 at 522 (1957)).

The transcript of the record is barren of any such evidence of provocation. * * [Emphasis added.] [Smith was discharged.]

U.J.I. Crim. 2.20 was submitted to the jury. It contained the definition and meaning of "sufficient provocation" and reads:

The difference between second degree murder and voluntary manslaughter is provocation. In second degree murder the defendant kills without having been sufficiently provoked, that is, without sufficient provocation. In the case of voluntary manslaughter the defendant kills after having been sufficiently provoked, that is, as a result of sufficient provocation. Sufficient provocation reduces second degree murder to voluntary manslaughter.

Sufficient provocation can be any action, conduct or circumstances which arouse anger, rage, fear, sudden resentment, terror or other extreme emotions. *The provocation must be such as would affect the ability to reason and cause a temporary loss of self control in an ordinary person of average disposition. The provocation must be such that an ordinary person would not have cooled off before acting.* [Emphasis added.]

The State claims that the provocative telephone call from Linda put into motion the series of events that led to Linda's death. The State contends that it showed conclusively that John reacted in response to the provocation of Linda. This argument falls short of the meaning of "sufficient provocation" in three respects. First, when buying the gun John acted calmly, free of any extreme emotions. Second, John walked about the area a considerable period of time before approaching Linda's residence. He did not act immediately or soon after the provocation. *State v. Trujillo,* 27 N.M. 594, 203 P. 846 (1921). Even if we assumed that initially John was angered, he had sufficient time to cool off. He did not lose self control. Sudden anger or heat of passion and provocation must concur. *State v. Nevares,* 36 N.M. 41, 7 P.2d 933 (1932). Finally, "And words alone, however scurrilous or insulting, will not furnish the adequate provocation required for this purpose." *Nevares, supra,* Id. at 44–5, 7 P.2d at 935.

The Committee Commentary shows that *Nevares* was considered in arriving at the definition of "sufficient provocation." The "words alone" concept does not fall within the terms "any action, conduct or circumstances which arouse anger" as set forth in U.J.I. Crim. 2.20, *supra.* We conclude that the telephone conversation did not constitute "sufficient provocation."

Absent "sufficient provocation," there was no evidence to support submission of voluntary manslaughter to the jury. John is discharged on this count of the criminal information.

B. *There was sufficient evidence to support the crime of aggravated burglary.*

Section 30-16-4(A), N.M.S.A. 1978 reads:

Aggravated burglary consists of the unauthorized entry of any . . . dwelling . . . with intent to commit any felony . . . therein and the person either:

A. is armed with a deadly weapon;

Pursuant to U.J.I. Crim. 16.22, the court instructed the jury that "when the defendant entered the Linda Castro residence, he intended to commit murder when he got inside . . . ." "Murder" was stated to be the felony.

■ The crucial factor in the crime of aggravated burglary is whether the defendant had the *intent* to commit a felony on entering the dwelling, not whether the felony was actually committed. Intent does not have to be consummated. *State v. Tixier,* 89 N.M. 297, 551 P.2d 987 (Ct.App.1976).

■ The jury acquitted defendant of first and second degree murder and we hold defendant not guilty of voluntary manslaughter. None of these crimes were actually committed. This fact does not resolve the problem. The failure of defendant to commit murder in any of its degrees did not foreclose the jury from concluding that at the time of entry defendant did intend to commit murder in any one of its degrees. Proof of intent at the time of entry does not depend upon the subsequent commission of the felony, failure to commit the felony or even an attempt to commit it. *People v. Robles,* 207 Cal.App.2d 891, 24 Cal.Rptr. 708 (1962).

■ Defendant unlawfully entered Linda's home and from a distance of five feet shot Linda three times and killed her. Defendant testified that upon entry he intended to shoot Linda in the spine. This was an admission that he intended to commit aggravated battery as a matter of law, i. e., to inflict great bodily harm with a deadly weapon, a third degree felony. Section 30–3–5, N.M.S.A. 1978. In other words, defendant confessed to aggravated burglary, except for his defense of insanity. The court should have instructed the jury to find defendant guilty of aggravated burglary unless the jury believed him to be insane at the time.

During deliberations, the jury submitted an inquiry whether the essential element of "felony" should read:

Murder or great bodily harm when he got inside.

Out of the presence of parties and attorneys, the court answered "no" as to "great bodily harm," and instructed the jury that:

[T]he word "murder" is defined by either of the following: 1, 2, or 3. One, murder in the first degree, murder in the second degree, voluntary manslaughter.

In the alternative, the inquiry of the jury should have led the district court to instruct the jury that "when the defendant entered the Linda Castro home he intended to commit aggravated battery," i. e., to inflict great bodily harm with a deadly weapon.

■ Nevertheless, the jury was not compelled to believe defendant's testimony that his only intent at the time of entry was to do great bodily harm. Criminal intent is a state of mind, *State v. Viscarra,* 84 N.M. 217, 501 P.2d 261 (Ct.App.1972), known only by defendant. A jury cannot determine defendant's state of mind at the time of entry except from the circumstances surrounding the death of Linda and the reasonable inferences to be drawn therefrom.

In *Robles, supra,* defendant was charged with rape and aggravated burglary with intent to commit rape. The rape charge was dismissed for failure of the jury to agree. Defendant contended that the failure to find him guilty of rape negatived his conviction of burglary with intent to commit rape. In answer, the California court enumerated two rules that govern appellate review of the sufficiency of the evidence when the charge is burglary. First, the jury's verdict will not be disturbed if the circumstances reasonably justify the facts which the jury deduced from the evidence and if those facts are sufficient to support the verdict. Second, burglary may be

proved by circumstantial evidence. The burglarious intent can be reasonably and justifiably inferred from the unauthorized entry alone.

 Under the rules, the jury could reasonably infer from the circumstances in the instant case that defendant intended to commit one of the degrees of murder. The jury did believe that he committed the crime of voluntary manslaughter. "We place our reliance on the sense of justice and fair play reposing in juries under correct instructions upon the law." *State v. Fiechter,* 89 N.M. 74, 77, 547 P.2d 557, 560 (1976).

Defendant raises two other issues in support of reversal.

The defendant claims that the trial court erred in not directing a verdict by reason of insanity. The evidence in the record was sufficient to warrant submission of the issue of the defendant's sanity to the jury as a question of fact. Defendant was not entitled to a directed verdict.

Appellant's final argument is that the introduction of irrelevant hearsay by the State and prosecutorial misconduct warrants a mistrial. To permit the defendant's mother-in-law to testify concerning the defendant's dismissal from employment for the harassment of three women was harmless error. In light of the seventeen page sworn statement in which the defendant admitted the killing and the statements relating the circumstances surrounding the shooting given by defendant's children, appellant's claim of prejudice cannot stand. *Proper v. Mowry,* 90 N.M. 710, 568 P.2d 236 (Ct.App.1977). However, we do not compliment the district attorney who persisted in presenting irrelevant testimony. This conduct tends to deny a defendant a fair trial. Under the circumstances of this case, defendant was not entitled to a mistrial.

Defendant's conviction of voluntary manslaughter is reversed.

Defendant's conviction of aggravated burglary is affirmed.

IT IS SO ORDERED.

LOPEZ, J., concurs.

ANDREWS, J., concurring in result.