643 P.2d 609

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Orlando Lorenzo MELENDEZ, Defendant-Appellant.**

No. 4665.

Court of Appeals of New Mexico.

Feb. 12, 1981.

Jeff Bingaman, Atty. Gen., Clare E. Mancini, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Tandy L. Hunt, Hunt & Currier, Roswell, for defendant-appellant.

## OPINION

WALTERS, Judge.

Defendant, charged with murder and conspiracy to commit murder, was convicted by the jury of voluntary manslaughter. New evidence was discovered shortly after trial, but defendant's prompt motion for a new trial was denied.

Johnny Sambrano died of a gunshot wound. He was a known member of the Tegada-Sambrano-Herrera-Madrid group, and all of them were recognized locally as frequent "cruisers" in Tegada's one-of-a-kind black Chevrolet vehicle. Defendant claimed that he and his companions were fired on twice by someone in the Tegada car early on the evening Sambrano was killed. Later that night, while defendant and his friends were driving around looking for the site of a party they had been told about, they saw the Tegada car and decided to "talk to them . . . to quit shooting at us." According to defendant, as they were about to stop near the Tegada car, the passenger door of the Tegada vehicle opened and someone shot at the vehicle in which defendant was a front-seat passenger. Fearing he would be shot, defendant reached down and grabbed a .30 caliber rifle he had picked up from his brother-in-law after the first shooting incident that evening, ducked below the passenger door and "just shot it." Defendant heard one more shot from the back of the car he was in, after he fired.

The issues briefed on appeal are: (1) the trial court's refusal to allow a witness to testify for the defendant; (2) failure to give uniform jury instructions on causation, mistake of fact, and involuntary manslaughter; (3) exclusion of evidence of the reputation, character and habits of the victim and prosecution witnesses alleged to have shot at defendant; (4) denial of defendant's motion for a new trial based on newly discovered evidence. Other issues presented in the docketing statement but not briefed are deemed abandoned.

We think there is merit to several of defendant's arguments, particularly those dealing with failure to give an instruction on involuntary manslaughter, exclusion of evidence of the reputation of the victim and his companions, and denial of a new trial.

■ (1) The evidence would have supported a verdict of involuntary manslaughter, i.e., the killing of a human being, without malice, committed in the doing of an unlawful act not amounting to a felony (negligent use of a deadly weapon, § 30–7–4, N.M.S.A. 1978). A requested instruction, justified by the evidence, must be given. *State v. Padilla*, 66 N.M. 289, 347 P.2d 312 (1959); *State v. Durham*, 83 N.M. 350, 491 P.2d 1161 (Ct.App.1971).

■ (2) The tendered evidence of the police officers regarding the alleged aggressors' reputations should not have been excluded. It strongly confirmed defendant's claim that the Tegada group was known "to carry guns and to shoot at and scare people." It was admissible as probative of "an essential element of . . . [self] defense," N.M.R.Evid. 405(b), N.M.S.A. 1978, because it was relevant to defendant's claim that (1) occupants of the Tegada car were aggressors, and (2) he had reasonable apprehensions for his life and safety. *State v. Ardoin*, 28 N.M. 641, 216 P. 1048 (1923). *See also* N.M.R.Evid. 402; *State v. Bazan*, 90 N.M. 209, 214, 561 P.2d 482 (Ct.App.1977); *State v. Alderette*, 86 N.M. 600, 526 P.2d 194 (1974). Where self-defense is urged, defendant's credibility is a crucial matter of proof. *Ardoin* long ago analyzed the admissibility of such evidence, and that analysis thoroughly accords with our present rules of evidence and with the self-defense instruction, U.J.I.Crim. 41.41, which was given. Justice Botts said there, at 28 N.M. 646, 216 P. 1041:

It strikes us that the true guide [for excluding evidence] should be reasonable discretion, and whenever the specific act by reason of its character, or its relationship in time, place or circumstance to the other facts in the case, would legitimately and reasonably either affect the defendant's apprehensions or throw light on the

question of aggression, or upon the conduct or motives of the parties at the time of the affray, it should be admitted.

■ (3) The recovery of a spent .45 caliber bullet, after trial, from under the hood of defendant's car, and evidence regarding its angle of entry, and rifling characteristics consistent with its having been fired by a gun of the type and caliber known by police to be owned by Tegada, was not merely cumulative evidence. It was sufficient to meet the standards of *State v. Ramirez*, 79 N.M. 475, 444 P.2d 986 (1968). The bullet was a material piece of demonstrative evidence strengthening defendant's theory of self-defense and bearing upon the truthfulness of two important State witnesses. It is clear from the jury's verdict that defendant's claimed self-defense was not believed; else the defendant would have been acquitted.

Section 30–2–7, N.M.S.A. 1978 provides that homicide is justifiable "when committed in the necessary defense of [one's] life ... or in necessarily defending against any unlawful action directed against himself ... or when committed in the lawful defense of himself or of another and when there is a reasonable ground to believe a design exists to commit a felony or to do some great personal injury against such person or another, and there is imminent danger that the design will be accomplished." This statute expresses the essence of self-defense. *See State v. Maestas*, 63 N.M. 67, 313 P.2d 337 (1957). Section 30–2–8, N.M.S.A. 1978, dictates that a finding of justifiable homicide imposes on the jury the obligation to find the defendant not guilty.

With the additional evidence produced at the motion for new trial, a jury could well have reached a different result on defendant's guilt. A new trial on charges of involuntary manslaughter only should have been allowed. *See State v. Fuentes*, 67 N.M. 31, 351 P.2d 209 (1960); *Ex parte Williams*, 58 N.M. 37, 265 P.2d 359 (1954).

(4) Our final discussion relates to the jury's finding defendant guilty of voluntary manslaughter. The statute declares voluntary manslaughter to be a killing, without malice, "committed upon a sudden quarrel or in the heat of passion." Sec. 30–2–3 A, N.M.S.A. 1978. The statute which creates and defines the crime was no part of the instructions to the jury. Many of the U.J.I. Crim. instructions seem indifferent to advising the jury in the same terms as chosen by the legislature to define crimes and defenses.

We can be certain that, under the evidence produced at trial, the jury did not believe defendant acted in self-defense at the time he fired his gun. If they had believed his testimony that the occupants of the Tegada car had fired at him just before he returned the gunfire, they could not have reached the conclusion that he was not lawfully defending himself against what he reasonably believed was a design of others to commit great personal injury to himself and his companion and that there was imminent danger that the design would be accomplished. Section 30–2–7, *supra*. Had they believed defendant, they were instructed and obliged to find him not guilty of any crime. The jury, however, did acquit defendant of second degree murder. It is thus beyond questioning that they found he had been provoked. The court instructed the jury in the language of U.J.I. Crim. 2.20:

> If you find that the defendant acted as a result of sufficient provocation or if you have reasonable doubt as to whether he so acted, you must not find him guilty of second degree murder, and you should proceed to consider whether he is guilty of voluntary manslaughter.
>
> For you to find the defendant guilty of voluntary manslaughter, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. The defendant killed JOHN SAMBRANO;
>
> 2. The defendant had an intent to kill or do great bodily harm to JOHN SAMBRANO;
>
> 3. This happened in New Mexico on or about the 19th day of August, 1979.

The difference between second degree murder and voluntary manslaughter is provocation. In second degree murder the defendant kills without having been sufficiently provoked, that is, as a result of sufficient provocation. Sufficient provocation reduces second degree murder to voluntary manslaughter.

Sufficient provocation can be any action, conduct or circumstances which arouse anger, rage, fear, sudden resentment, terror or other extreme emotions. The provocation must be such as would affect the ability to reason and cause a temporary loss of self control in an ordinary person of average disposition. The provocation must be such that an ordinary person would not have cooled off before acting.

■ Once defendant's story of self-defense is obliterated (by reason of the jury's verdict), the only evidence of provocation left in the record is the testimony that defendant and his companion were shot at by occupants of the Tegada car about three hours earlier that night. According to the law of New Mexico, which has existed for at least sixty years (*see State v. Pruett*, 27 N.M. 576, 203 P. 840 (1921); *State v. Trujillo*, 27 N.M. 594, 203 P. 846 (1921)), and has been reaffirmed as recently as *State v. Castro*, 92 N.M. 585, 592 P.2d 185 (Ct.App.) *cert. den.* 92 N.M. 621, 593 P.2d 62 (1979), and *Smith v. State*, 89 N.M. 770, 558 P.2d 39 (1976), unless there is evidence that sudden anger or heat of passion occurs "immediately or soon after the provocation," there can be no sufficient provocation to warrant or permit reduction of the killing from murder to manslaughter. Anger or heat of passion without concurrent provocation "will not suffice to effect the reduction in the grade of the offense." *State v. Nevares*, 36 N.M. 41, 44, 7 P.2d 933 (1932). A three-hour "cooling-off" period is too long. *State v. Castro, supra.* Three-and-a-half hours was too long in *Trujillo, supra.*

■ Under all of the cases cited above, once the proof of concurrent provocation and passion fails, a court may not " '... permit a jury to establish by its verdict a

fact which there is no evidence to sustain....' " *Smith v. State*, 89 N.M. 770, 775, 558 P.2d 39 (1976). A verdict of voluntary manslaughter upon evidence which would sustain only murder, if evidence showing justifiable homicide be rejected, requires reversal and discharge of the defendant. *Id.* at 89 N.M. 777, 558 P.2d 39. Why such a result? *Trujillo, supra*, first articulated it, and *Smith, supra*, adhered to it. *Trujillo* said, at 27 N.M. 602–603, 203 P. at 849:

> The crime here was a dastardly assassination. A man without warning was cruelly beaten to death with an axe.... The question was whether the appellant committed the act. If he did, he was guilty of murder either in the first or second degree. A verdict accordingly would be supported by the evidence, and no other verdict would be so supported. Why, then, did the jury convict of manslaughter? The only reasonable answer is that the jury had a reasonable doubt as to whether the defendant actually committed the act, and by way of compromise, and to avoid the terrible consequences of a mistake, they found defendant guilty of manslaughter, a crime of which he was not guilty. He thereby lost his right to the benefit of the doctrines of reasonable doubt and presumption of innocence.

> \* \* \* \* \* \*

> The defendant by the verdict has been acquitted of murder, and has been convicted of a crime of which he is not shown to be guilty, and he is consequently entitled to be discharged.

In *Smith, supra*, this approved result followed a voluntary manslaughter conviction upon proof that defendant beat, chained, "folded [the victim] up" in the trunk of a car, threw her into an oil well slush pit tank and held her down until she drowned in oil. Because there was no contention that there was "any sudden quarrel or heat of passion of any kind ... [and] that '... defendant's participation in the killing was in the absence of provocation and, thus ... [t]he evidence proves murder, not voluntary manslaughter' " (89 N.M. at 772–773, 558

P.2d 39), the Supreme Court was compelled by the rules of precedent and stare decisis to reverse and discharge defendant.

So it was also in *Castro.* Defendant deliberately purchased a gun and ammunition and walked to his ex-wife's home where, from a distance of five feet, he shot her three times and killed her, having "planned to shoot her in the spine to prevent her from dancing." His action was aroused by her use of abusive language to him about an hour earlier. Defendant's conviction of voluntary manslaughter earned his discharge on appeal because, having had "sufficient time to cool off," he acted without sufficient provocation to support the lesser crime of voluntary manslaughter.

Some of the foregoing discussion at least insinuates the inadequacies of the uniform criminal jury instructions relating to homicide. They do not "track" the language of the criminal statutes, and they do little to enlighten a jury "fully and clearly on all phases of the law on the issues ... warranted by the evidence." *State v. Heisler,* 58 N.M. 446, 455, 272 P.2d 660 (1954). U.J. I.Crim. 2.20 was given in *Castro, supra,* and undoubtedly was as much responsible there for the jury's erroneous verdict as it contributed to the jury's confusion in this case.

■ This court is without authority to change, abolish, or set aside these instructions which have been approved by Supreme Court rule. *State v. Scott,* 90 N.M. 256, 561 P.2d 1349 (Ct.App.1977). It is appropriate for this Court to comment, however, *see* Hopkins, *The Role of an Intermediate Appellate Court,* XLI Brooklyn L.Rev. 459 at 465 (1975), that criminal jury instructions on murder in the second degree and voluntary manslaughter are overdue for reevaluation. This is not the first case in which the U.J.I.Crim. instructions have caused difficulty. *See State v. Scott,* 90 N.M. 256, 561 P.2d 1349 (Ct.App.1977); *State v. Smith,* 89 N.M. 777, 558 P.2d 46 (Ct.App.1976).

■ Our concern is that juries are unnecessarily confused in their deliberations; the instruction delineating the difference between second degree murder and voluntary manslaughter is incomplete and inunderstandable without additional instructions affirmatively apprising the jury of the crime charged and the defenses available to the accused. That this confusion in the minds of the jury has led, over the years, to the necessity of discharging from further proceedings defendants who should have been convicted of first or second degree murder, is a soul-wrenching and mind-searing repugnancy in the law. If clearer or additional instructions would prevent such legally correct but grotesque outcomes in the future, a reassessment of the instructions aimed toward better informing laymen jurors would be a worthwhile undertaking.

■ Thus, although the matters discussed in Sections (1), (2), and (3) above would have warranted a retrial on charges of involuntary manslaughter, defendant was not tried on that charge and, moreover, we are bound by *Smith, Castro, Trujillo,* and all other similar New Mexico decisions, to order defendant's discharge.

The judgment of conviction is reversed; the cause is remanded with directions to set aside the jury's verdict, to dismiss the cause and to discharge defendant.

IT IS SO ORDERED.

HERNANDEZ, C. J., and WOOD, J., concur.