766 P.2d 1332

Josephine BACA, Claimant–Appellee,

v.

BUENO FOODS and Safeco Insurance
Company, Respondents–Appellants.

No. 10542.

Court of Appeals of New Mexico.

Dec. 8, 1988.

Gail Stewart, Gallagher & Casados, P.C., Albuquerque, for respondents-appellants.

Edward F. Benavidez, Albuquerque, for claimant-appellee.

## OPINION

HARTZ, Judge.

The Workers' Compensation Division's (WCD) hearing officer found that claimant, Josephine Baca, injured a finger and her back in an accident arising out of her employment with Bueno Foods and had been unable to perform job duties since then. He granted her judgment for temporary total disability benefits because her injury had not yet reached maximum medical improvement. We reverse the award for temporary total disability after considering: (1) the meaning of "maximum medical improvement" in the definition of "temporary total disability"; (2) whether there was substantial evidence to support the hearing officer's finding of no maximum medical improvement; and (3) the allocation of the burden of proof on that issue. The hearing officer also ordered respondents, Bueno Foods and Safeco Insurance Company, to pay the bills from two doctors Baca consulted. We reverse the judgment requiring respondents to pay the bills and remand for further findings with respect to the bill of one of the doctors.

## TEMPORARY TOTAL DISABILITY

The issue of temporary total disability arises under transient provisions of the New Mexico Workers' Compensation Act. NMSA 1978, §§ 52-1-1 to -69 (Cum.Supp. 1986) (the Interim Act). Section 52-1-26 of the Interim Act defines "temporary total disability" as "the inability of the workman, by reason of accidental injury arising out of and in the course of his employment, to perform his duties *prior to the date of his maximum medical improvement.*" (Emphasis added.) Section 52-1-27 of the Interim Act defines "date of maximum medical improvement" as "the date after which further recovery from or lasting improvement to an injury can no longer be reasonably anticipated based upon reasonable medical probability." After reaching maximum medical improvement the employee may receive scheduled benefits or permanent total or partial disability benefits provided by Sections 52-1-41 to -43 of the Interim Act.

This statutory scheme is common in the United States.

> In the usual industrial injury situation, there is a period of healing and complete wage loss, during which, subject to any applicable waiting period, temporary total is payable. This is followed by a recovery, or stabilization of the condition, and probably resumption of work, and no complex questions ordinarily arise.
>
> The commonest question is: when does the "healing period" end and "stabilization" occur? The answer to this question determines in most states when temporary benefits cease and when the extent of permanent disability can be appraised, for purposes of making either a permanent partial or a permanent total award.

2 A. Larson, *The Law of Workmen's Compensation* § 57.12(b) at 10-14 to 10-17 (1987) (footnotes omitted).

Respondents contend that no substantial evidence supports the finding that Baca had not reached maximum medical improvement. In *Tallman v. ABF*, 108 N.M. 124, 767 P.2d 363 (App.1988), we held that whole record review as announced in *Duke City Lumber Co. v. New Mexico Environmental Improvement Board*, 101 N.M. 291, 681 P.2d 717 (1984), applies to appeals from the WCD. Following *Tallman*, we view "the live witness testimony as the fact finder did and considering all other evidence, favorable and unfavorable, and disregarding that which is discredited, we then decide if there is substantial evidence in the whole record to support the agency's finding or decision." *Id.* at 128, 767 P.2d at 367.

■ The statutory definition of date of maximum medical improvement states that the determination of the date must be "based upon reasonable medical probability." To prove a proposition to a reasonable medical probability requires expert medical testimony establishing that the proposition is more likely than not. *See Archuleta v. Safeway Stores, Inc.*, 104 N.M. 769, 771, 727 P.2d 77, 79 (Ct.App.1986) (former § 52–1–28, which required proof of causation "as a medical probability by expert medical testimony," is paraphrased as requiring proof "by a reasonable medical probability"); *Sanchez v. Molycorp, Inc.*, 103 N.M. 148, 152, 703 P.2d 925, 929 (Ct. App.1985). Therefore, the substantial evidence necessary to support a finding of no maximum medical improvement must be expert medical testimony that there is a probability of further recovery from or lasting improvement to the injury.

■ To support the hearing officer's finding, Baca relies on the deposition testimony of Dr. Norman F. Moon, which was admitted into evidence at the hearing. Dr. Moon testified that as a result of her accident, Baca sustained chronic cervical, dorsal, and lumbosacral muscular strain, a chronic anxiety reaction and mild hysterical reaction, and a chronic mallet finger. He also testified that she suffered from generalized osteoporosis; but he did not attribute that condition to the accident. He noted that she had received medication for her back.

Baca's answer brief cites the following passages in Dr. Moon's testimony as showing that she had not reached maximum medical improvement:

*Passage 1*

Q. At this time, what would be your recommendation as to future treatment for Ms. Baca?

A. Well, I still think she ought to see the psychiatrist, and have some psychological testing, and then be put on a conservative treatment program, and perhaps kept on her present medi-cation program, because she does get improvement with that. I think that she just needs to be more thoroughly evaluated to find out what are the problems. She may very well need some psychological or psychiatric medication program.

*Passage 2*

Q. Why does she need care?

A. I think she needs care because she is still symptomatic. I think that anybody that is still having some problems, physical, mental, or both, really should be under care. I don't think she is getting any better without care. I think she is, in a lot of ways, getting worse. Certainly from a psychological standpoint, as I implied in my second letter, that she is getting worse from that standpoint. I don't think it is good for people who need treatment not to be treated.

The testimony concerning Baca's mental condition is irrelevant, because the hearing officer found only her back and finger ailments were caused by her accident. The parties' proposed findings and conclusions show there is no dispute that Baca's finger had reached maximum medical improvement. The testimony concerning her improvement from her medication program, however, supports a finding that her back ailment could benefit from further treatment.

The hearing officer may have decided that a possible benefit from future treatment suffices to establish that the employee has not yet reached maximum medical improvement. But continuing treatment is consistent with maximum medical improvement if it produces improvement that is only symptomatic relief.

The fact that some treatment is still necessary, such as physical therapy or drugs, does not necessarily rule out a finding that the condition has become stabilized, if the underlying condition causing the disability has become stable and if nothing further in the way of treatment will improve that condi-

tion.... The persistence of pain may not of itself prevent a finding that the healing period is over, even if the intensity of the pain fluctuates from time to time, provided again that the underlying condition is stable.

A. Larson, *supra,* § 57.12(c) at 10–25 to –29 (footnotes omitted).

This court has stated, "The need for further medical treatment is not incompatible with the status of permanent disability." *Lane v. Levi Strauss & Co.,* 92 N.M. 504, 506, 590 P.2d 652, 654 (Ct.App.1979) (citation omitted). The *Lane* opinion cited with approval *Home Insurance Co. v. Industrial Commission,* 23 Ariz.App. 90, 530 P.2d 1123 (1975), in which a worker rendered quadriplegic was held to be permanently rather than temporarily disabled, although his general health condition was expected to fluctuate and he was still subject to a number of possible complications, such as breakdown of the skin, genitourinary infection, respiratory complications, and metabolism disturbances. The Arizona court held that such a circumstance did not constitute "the type of continuing need for medical treatment which will prevent the workman's condition from becoming stationary so as to entitle him to a permanent, as opposed to a temporary, award." 23 Ariz. App. at 96, 530 P.2d at 1129. *See Continental Cas. Co. v. Industrial Comm'n,* 23 Ariz.App. 294, 532 P.2d 869 (1975) (condition is stable despite fluctuating pain and treatment with analgesics); *Rose v. Thornton & Florence Elec. Co.,* 4 Kan.App.2d 669, 609 P.2d 1180 (1980).

These authorities elucidate the statutory definition of maximum medical improvement. In applying the language "further recovery from or lasting improvement to an injury," we look for a *recovery*—not temporary improvement, but *lasting* improvement; and the recovery must be from the *injury* itself, the underlying condition, not just from the symptoms it creates.

Dr. Moon's testimony that Baca "does get improvement" from her medication does not satisfy the statutory definition

because the type of improvement is not specified as lasting improvement to the injury. On the contrary, other testimony by Dr. Moon shows that the improvement to which he was referring was symptomatic relief. During his cross-examination, immediately after Passage 2, he testified:

Q. But with the mild symptoms that she has, is orthopedic care really going to benefit her at all at this point?

A. Well, she is on some medication and *she has claimed to me that that medication made her orthopedically better than she had been.*

Q. Is it possible she had some kind of psychological condition that those drugs could have acted as some kind of panacea for?

A. I don't know what her psychological state is. If you are saying just because she is taking a pill, even a placebo, she would be better or not, I don't know whether that would be true or not. *I do think that these medications, Flexeril and the Naprosyn, I would expect them to help her symptomatically as far as her orthopedic condition is concerned.* [Emphasis added.]

Baca's improvement was an improvement over how she had *felt* before taking medication. The medication was to treat symptoms, not to effect a lasting improvement to her injury.

Moreover, Dr. Moon also testified that when he examined Baca, she had "about a 5% permanent partial total body impairment," which suggests that the underlying condition is permanent and any treatment would be symptomatic, not curative.

In short, Dr. Moon never testified that he would expect further recovery from or lasting improvement to Baca's injury. Therefore, his testimony cannot support the finding that she had not reached maximum medical improvement.

Although Baca does not rely on the document, we also consider an exhibit admitted at the hearing in which Dr. Moon spe-

cifically addressed maximum medical improvement. Dr. Moon responded "No" to a WCD questionnaire that asked, "Has the claimant reached the date after which further recovery from or lasting improvement to the injury can no longer be reasonably anticipated"? But this response was ambiguous, because it may have been referring to ailments other than those that the hearing officer attributed to the accident. In an earlier response on the questionnaire, Dr. Moon had listed four ailments: "(1) Chronic mallet finger, right ring finger. (2) Chronic cervical, dorsal, lumbosacral muscular strains. (3) Generalized osteoporosis. (4) Chronic anxiety reaction and mild hysterical reaction." For which of these did Dr. Moon expect lasting improvement? Perhaps all. Or perhaps only the chronic anxiety, which the hearing officer did not attribute to the accident.

Evidence from which a proposition can be derived only by speculation among equally plausible alternatives is not substantial evidence of the proposition.

> Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate support for a conclusion.
>
> A reasonable inference is a conclusion arrived at by a process of reasoning. This conclusion must be a rational and logical deduction from facts admitted or established by the evidence, when such facts are viewed in the light of common knowledge or common experience.

*Samora v. Bradford*, 81 N.M. 205, 207, 465 P.2d 88, 90 (Ct.App.1970) (citations omitted).

The questionnaire response cannot form the basis for a rational and logical deduction that Baca had not reached maximum medical recovery from her back injury. There being no substantial evidence in the record as a whole to support the hearing officer's finding of no maximum medical improvement, we must overturn the finding.

■ Because the hearing officer rejected respondents' proposed finding that Baca had reached maximum medical improvement, we are left with no finding on the subject. We therefore consider who had the burden of proving whether or not Baca had reached maximum medical improvement.

■ One who seeks relief under a statute has the burden of proving that he comes within its terms. *See Sullivan v. Quinlivan*, 308 Mass. 339, 32 N.E.2d 209 (1941); *Robbins v. Webb's Cut Rate Drug Co.*, 153 Fla. 822, 16 So.2d 121 (1944) (En Banc); *Stelling v. Richmond County*, 84 Ga.App. 618, 66 S.E.2d 807 (1951). Because Baca seeks benefits under statutory provisions for workers who have temporary total disability, she has the burden of proving that her condition meets the definition of temporary total disability. Undoubtedly this burden requires her to prove that she was unable to perform her duties because of an employment-related accident.

■ One might, however, contend that the language regarding maximum medical improvement in the definition of temporary total disability creates an exception to the general rule, and that an employer who opposes a finding of total temporary disability has the burden of establishing that the employee had reached such improvement. It is awkward to construe the statutory language as creating an exception; the definition of temporary total disability does not contain any word like "but," "except," or "provided." But even if we accept such a construction, the burden of proof with respect to maximum medical improvement is not necessarily upon the employer. We apply the following rule:

> [W]hen an exception is included and forms a necessary part of the enacting clause of a statute, the party relying theron [sic] must negative the exception; but where an exception appears in a subsequent section or division, or appears in another statute, it is unnecessary to do so, such being matters of defense to be raised by the opposite party.

*Whitfield v. City Bus Lines, Inc.*, 51 N.M. 434, 438, 187 P.2d 947, 950 (1947). *See*

Annotation, *Burden of Allegation and Proof in Civil Cases as Regards Exception in Statute*, 130 A.L.R. 440 (1941); Cleary, *Presuming and Pleading: An Essay on Juristic Immaturity*, 12 Stan.L. Rev. 5, 8 (1959). *But cf. State v. Bell*, 90 N.M. 134, 560 P.2d 925 (1977) (in *criminal* cases the defendant ordinarily must prove he comes within an exception). Although application of this established rule of statutory construction may sometimes lead to allocation of the burden of proof contrary to what we would otherwise prefer, the advantage of adhering to the rule is that we enable legislative draftsmen to predict the legal consequences of their language.

It may not always be easy to determine if an exception is "part of the enacting clause" or is in a "subsequent section or division." But there is no question here. The legislature did not choose to enact a separate statutory section stating that temporary total disability terminates when the worker achieves maximum medical improvement. It incorporated into the definition of "temporary total disability" the requirement that the inability to perform duties be "prior to the date of his maximum medical improvement." Therefore, Baca had the burden of proving that she had not reached maximum medical improvement. Having failed to do so, she was not entitled to temporary total disability benefits.

### DOCTORS' BILLS

■ Respondents also contest the hearing officer's conclusion that they should pay for the medical care provided by Dr. Charles Romero and Dr. Norman Moon. After Baca's accident Bueno Foods provided for Drs. Berger, Burney and Ball to see her regarding her finger injury. None of them recorded any back complaint by Baca. On her own initiative she sought treatment of her back by Dr. Romero, a chiropractor. Her attorney later arranged for her to see Dr. Moon.

The WCD's judgment ordered respondents to pay Dr. Moon $520 for "reasonable and necessary medical treatment," even though Baca's requested conclusions of law regarding medical care costs specifically referred to Dr. Romero's bill but not to Dr. Moon's. Respondents claim there is no evidence that the charges by Dr. Moon were for treatment. The record reflects that Baca's attorney requested Dr. Moon to evaluate her for litigation, not to treat her. Baca's brief contends there is evidence supporting the hearing officer's finding that Dr. Moon's charges were for medically necessary "treatment" of her job-related injuries; but that assertion is supported by no reference to the record except the hearing officer's findings.

Because there was no evidence to support the award of Dr. Moon's fees, we reverse that portion of the judgment. We do not consider whether respondents might have been required to pay a fee to Dr. Moon pursuant to NMSA 1978, Section 52–5–7(F) (Cum.Supp.1986), which incorporates the provisions of NMSA 1978, Section 38–6–4 (Repl.Pamp.1987) relating to expert witness fees. Baca made no request for payment under that statute.

■ Respondents also claim that the record lacks support for the hearing officer's finding that Dr. Romero's bill for $598.86 was for treatment of Baca's job-related injuries and represented treatment reasonable in extent and in cost. Baca's brief did not respond to this contention with any reference to the record. Nevertheless, we have examined the record to see if it contains substantial evidence that: (1) Dr. Romero's fee was a reasonable charge for his services; (2) the services provided by Dr. Romero were reasonably necessary treatment for Baca's condition; and (3) the condition treated was caused by a work-related accident.

■ The record contains an interim report from Dr. Romero to Safeco Insurance Company stating that he treated Baca, and quoting a fee of $598.86. In workers' compensation cases our appellate courts have stated that such a billing statement consti-

tutes prima facie proof of reasonableness. *Scott v. Transwestern Tankers, Inc.*, 73 N.M. 219, 222, 387 P.2d 327, 329 (1963); *DiMatteo v. County of Dona Ana*, 104 N.M. 599, 603, 725 P.2d 575, 579 (Ct.App. 1985). Although *Scott* and *DiMatteo* might be read as holding that the bill suffices to establish only that the amount charged was a reasonable fee, we see no reason to so limit the use of the bill. One can assume that a doctor who submits a bill would testify not only that the charge was reasonable but also that the treatment was reasonably necessary. In workers' compensation cases a doctor's bill should be prima facie evidence that the medical services rendered were reasonably necessary treatment for the patient's condition. That leaves only the need to establish the connection between the condition treated by Dr. Romero and Baca's accident. But both Dr. Romero's interim report and a report by Dr. Moon indicate that Dr. Romero's treatment was for Baca's back; so the record supports the finding that the medical care was for Baca's job-related injuries.

■ Respondents further contend, however, that they cannot be required to pay Dr. Romero's bill because Baca never requested chiropractic services from them and the care they provided was adequate. As the court stated in *Dudley v. Ferguson Trucking Co.*, 61 N.M. 166, 174, 297 P.2d 313, 318 (1956):

> It is apparently the contention of the claimant that under our compensation act to support the award of the sums for the boot and the medical examination he need only show the expenditures were justified from a medical standpoint and were of reasonable amount.
>
> Certainly these matters must be shown, but it must also be established that some request or demand, however informal, was made upon the employer or insurer to provide the articles or services.

*Montoya v. Anaconda Mining Co.*, 97 N.M. 1, 5, 635 P.2d 1323, 1327 (Ct.App.

1981), restated the rule as: "[A]n employee injured in a compensable job related accident may not ordinarily incur medical expenses for which an employer is to be held responsible under the Workmen's Compensation Act without first giving the employer a reasonable opportunity to furnish such services." The court noted an exception to the general rule, "where the medical services offered by the employer are not adequate." *Id.* at 6, 635 P.2d at 1328.

The hearing officer made no finding that Baca had given her employer a reasonable opportunity to furnish the services provided by Dr. Romero or that the medical services provided by the employer were inadequate. On the contrary, he rejected Baca's proposed findings of fact that "[b]ecause of Dr. Burney's refusal to treat the Claimant for her other injuries, the Claimant was forced to seek treatment from Dr. Charles Romero and Dr. Wolleson" and "Claimant started to see Dr. Romero because the treatment she received from Dr. Burney was not adequate to produce a full recovery from her injuries." He also rejected Baca's proposed conclusion of law that "Dr. Burney did not furnish all necessary care to the Claimant and therefore Claimant was allowed to seek her own medical attention." These rejections suggest that the hearing officer found that the doctors supplied by Baca's employer provided all the care Baca was entitled to request.

On the other hand, the hearing officer rejected respondents' proposed finding that "Respondent Safeco has provided adequate medical treatment and paid all reasonably necessary medical bills." Also, his conclusion of law that respondents should pay Dr. Romero's bill finds support from evidence in the record that Baca, who speaks no English, sought help concerning her back problem from the doctors provided by her employer, but they did not attend to it. Perhaps the hearing officer did not wish to be critical of Dr. Burney, so he refused a finding that Dr. Burney's care was inadequate; but at the same time he found that Baca was entitled to care from Dr. Romero

because the doctors provided by her employer had not responded to her complaints about her back.

"Where doubt or ambiguity exists as to the basis for the court's ruling, the ends of justice may require that the cause be remanded for specific findings on a determinative issue." *Corlett v. Smith,* 106 N.M. 207, 211, 740 P.2d 1191, 1195 (Ct.App.1987). We therefore reverse the judgment as to Dr. Romero's bill and remand for either (1) a conclusion of law denying Baca's claim regarding Dr. Romero's bill or (2) findings of fact that justify requiring respondents to pay Dr. Romero's bill.

## CONCLUSION

We reverse the WCD's judgment and remand for findings and conclusions with respect to Dr. Romero's bill.

IT IS SO ORDERED.

BIVINS and ALARID, JJ., concur.