This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                          **NO. 27,400**

**JOHANNA ANDREZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Stephen Pfeffer, District Judge**

Gary K. King, Attorney General
Andrew S. Montgomery, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Susan Roth, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**FRY, Chief Judge.**

Defendant appeals her conviction of second degree murder for the stabbing death of her boyfriend Manuel Garcia (Victim). Defendant contends that she

presented evidence that she killed Victim in self-defense and that the trial court improperly refused to instruct the jury to consider self-defense as a complete defense to the charges against her. We agree with Defendant and for the following reasons reverse the conviction and remand for a new trial.

**BACKGROUND**

Defendant and Victim had a stormy romantic relationship that included acts of domestic violence on the part of both. On the night of the stabbing, the couple engaged in an escalating fight that began with shouting and cursing and ultimately ended with Victim receiving a single fatal stab wound to the heart. During the course of the altercation, Defendant attempted to call the police, but her phone call was abruptly cut short while she was attempting to provide her address to dispatchers. The phone Defendant had used to call the police was later found in Victim's pocket. According to one of the responding officers, abusers typically take the phone away from their victims. A short time later, Defendant's neighbor called 911 and advised the dispatcher that she heard screaming, loud noises as if something was being thrown around, and the sound of a baby crying emanating from Defendant's apartment. A short time later, Defendant called 911 from a neighbor's phone and advised the dispatcher that her boyfriend had stabbed himself. When the police arrived, Victim was found dead near the kitchen with a single stab wound to the heart.

In her initial statements to police, Defendant stuck with her story that Victim had committed suicide. Defendant made statements indicating that she believed Victim wanted to kill himself with the knife and that she was "nervous" and "scared" during the altercation.

During Defendant's first trial on these charges, Defendant testified to her state of mind during the stabbing, the details of the altercation, and the long history of violence she had experienced at Victim's hands during their long relationship. The jury was instructed on self-defense in that proceeding. At the close of testimony, the jury hung, and the trial court declared a mistrial.

During Defendant's second trial, the defense proceeded in a similar manner Defense counsel expressed the intention to pursue a battered-woman theory of self-defense, arguing that the stabbing had been necessary and reasonable to protect Defendant from Victim's violence. The defense introduced Defendant's statements to police detectives following Victim's death, in which Defendant indicated nervousness and fear during the altercation. There was also some witness testimony regarding the violent relationship between the two parties. However, at the eleventh hour, Defendant invoked her constitutional right to abstain from testifying on her own behalf.

At the close of testimony in this second trial, defense counsel requested that the jury be instructed to consider self-defense as a possible complete defense to all charges leveled against Defendant. The trial court denied the request, reasoning that Defendant had failed to present sufficient evidence to support all of the elements of self-defense. Defendant was convicted of second degree murder and sentenced to twenty years incarceration. Defendant appeals the trial court's refusal to instruct the jury on self-defense.

**DISCUSSION**

**Standard of Review**

The propriety of refusing a jury instruction is a mixed question of law and fact and is thus reviewed de novo. *State v. Gaines*, 2001-NMSC-036, ¶ 4, 131 N.M. 347, 36 P.3d 438. On review, this Court does not weigh the evidence presented during trial, but rather determines whether sufficient evidence was offered to raise a reasonable doubt regarding self-defense. *Id.* A trial court's failure to instruct the jury on self-defense when the defendant has offered sufficient evidence on all of the elements is reversible error. *Id.*

**The Trial Court Erred by Refusing to Submit Self-Defense Instructions to the Jury**

In order to support a self-defense instruction, a defendant must offer sufficient evidence on every element of self-defense. *State v. Rudolfo*, 2008-NMSC-036, ¶ 17,

144 N.M. 305, 187 P.3d 170. Those elements are that "(1) the defendant was put in fear by an apparent danger of immediate death or great bodily harm, (2) the killing resulted from that fear, and (3) the defendant acted reasonably when he or she killed." *Id.* (internal quotation marks and citation omitted). In order to meet the first element, Defendant need not demonstrate that she was in actual danger of death or great bodily harm; it is enough that she harbored a genuine, subjective belief that she would be killed or harmed. *State v. Gallegos*, 104 N.M. 247, 249, 719 P.2d 1268, 1270 (Ct. App. 1986), *abrogated on other grounds by State v. Alberico*, 116 N.M. 156, 861 P.2d 192 (1993). Defendant need not offer substantial evidence on each element of self-defense; rather, the evidence need only be sufficient to allow reasonable minds to differ on each element. *State v. Duarte*, 1996-NMCA-038, ¶ 3, 121 N.M. 553, 915 P.2d 309. In other words, the evidence presented by Defendant must be "sufficient to justify a reasonable jury determination" that Defendant's actions were objectively reasonable in the face of a subjective fear of imminent death or great bodily harm. *Rudolfo*, 2008-NMSC-036, ¶ 27 (internal quotation marks omitted).

The State argues that because Defendant did not testify, there is insufficient evidence to infer that she subjectively feared for her safety and killed Victim as a result of that fear and that Defendant therefore failed to establish the first two elements required to obtain a self-defense instruction. We disagree. While "it is more

5

difficult [for a defendant] to make the requisite showing of actual fear without testimony from [the d]efendant," a defendant's testimony is not required to make a showing of fear, and the jury is permitted to infer the defendant's beliefs from circumstantial evidence. *Duarte*, 1996-NMCA-038, ¶ 7. Here, viewing the evidence in the light most favorable to giving an instruction on self-defense, Defendant presented sufficient evidence to allow a jury to infer that she subjectively believed that she was in imminent danger of death or great bodily harm and that she acted upon that fear when she killed Victim.

Specifically, Defendant presented evidence that she and Victim had been involved in a violent fight over the course of the night, that Victim had hit her and had possibly taken her phone away when she attempted to call 911, that she was nervous about Victim's behavior because he was "freaking out" and she knew she was going to have to fight him, and that Victim had grabbed a knife from the dishwasher and had used it in a threatening manner. In addition, the jury heard evidence that when Victim grabbed the knife, Defendant "thought [Victim] was going to hurt [her] or something" and that Defendant thought he was going to stab her. This evidence, coupled with evidence that Victim and Defendant had a history of violent physical encounters, is sufficient to allow a reasonable jury to infer that Defendant subjectively believed that she was in danger of death or great bodily harm and that she acted on that fear when

6

she stabbed Victim. *See Duarte*, 1996-NMCA-038, ¶ 7 (noting that the defendant's knowledge of the victim's reputation as a fighter coupled with the victim's aggressive behavior and the fact that the defendant attacked the victim immediately following the victim's aggression supported an inference that the defendant was motivated by fear of imminent harm); *Gallegos*, 104 N.M. at 250, 719 P.2d at 1271 (noting that past history of violence is relevant in determining the subjective beliefs of a defendant).

While the first two elements are subjective and focus on the perception of the defendant at the time of the incident, the third element is objective and "focuses on the hypothetical behavior of a reasonable person acting under the same circumstances as the defendant." *Rudolfo*, 2008-NMSC-036, ¶ 17 (internal quotation marks and citation omitted). With respect to this element, the State argues that Defendant failed to present sufficient evidence that an objectively reasonable person would have acted in the same manner as Defendant did because while Defendant presented evidence that Victim had a knife, Defendant did not present any evidence of what happened between the time that Victim picked up the knife and the time that Victim was ultimately stabbed. Because of this gap in the evidence, the State argues, the jury would have been forced to speculate as to what had happened and would have been unable to conclude that a reasonable person would have acted in the same manner as Defendant.

In support of its argument, the State notes that "[e]vidence from which a proposition can be derived only by speculation among equally plausible alternatives is not substantial evidence of the proposition." *Baca v. Bueno Foods*, 108 N.M. 98, 102, 766 P.2d 1332, 1336 (Ct. App. 1988). In making this argument, the State fails to account for the jury's ability to make reasonable inferences based on the evidence before it and the low burden Defendant has to meet in order to have the jury instructed on self-defense. *See Rudolfo*, 2008-NMSC-036, ¶ 27 (noting that the burden is minimal and requires only that the "evidence to raise a reasonable doubt in the mind of a juror about whether the defendant lawfully acted in self-defense"); *Duarte*, 1996-NMCA-038, ¶ 7 (noting that the jury is permitted to make inferences to support a self-defense jury instruction). "A reasonable inference is a conclusion arrived at by a process of reasoning. This conclusion must be a rational and logical deduction from facts admitted or established by the evidence, when such facts are viewed in the light of common knowledge or common experience." *Baca*, 108 N.M. at 102, 766 P.2d at 1366 (citation omitted). Thus, while a conclusion that requires pure speculation may be inadequate to support a self-defense instruction, a conclusion based on a reasonable inference can be sufficient to support a self-defense instruction if the inference allows reasonable minds to differ as to whether Defendant acted in self-defense. *See Duarte*, 1996-NMCA-038, ¶ 7.

8

By arguing that the jury would have to engage in pure speculation to determine exactly what happened in the moments before Defendant stabbed Victim, the State misplaces the focus of our inquiry. In determining whether Defendant offered sufficient evidence to support a self-defense instruction, we are not necessarily concerned with the precise details of the moments before the infliction of the fatal wound. Rather, our concern is whether Defendant provided sufficient evidence that she feared for her life, that she acted upon that fear, and that a reasonable person would have acted in the same manner. While specific details about the stabbing would have provided stronger evidence to support a self-defense instruction, we cannot say that a reasonable jury could not infer from the evidence actually presented that Defendant acted in self-defense. The evidence shows that Defendant and Victim were engaged in an argument throughout the night that increased in intensity from a shouting match to some sort of physical confrontation. The evidence further shows that Victim grabbed a knife while in the kitchen and that Victim's body was found on the floor of the living room near the kitchen. From this sequence of events, a reasonable inference can be drawn that Defendant acted in self defense when she stabbed Victim in the chest. Drawing this inference does not require the jury to engage in pure speculation. *But see Lytle v. Jordan*, 2001-NMSC-016, ¶¶ 31-32, 130 N.M. 198, 22 P.3d 666 (noting that testimony that officer had only analyzed five hair

9

samples per year was pure speculation where officer testified that he had done seventy examinations in his career because witness had no basis to average the number of exams by the number of years the officer had been employed).

The State's argument requires us to ignore the realities of the situation Defendant was faced with and the law of self-defense. We have previously noted that "[i]t is well established that deadly force may not be used in a situation involving simple battery or in a struggle in which there has been no indication that death or great bodily harm could result." *Duarte*, 1996-NMCA-038, ¶ 4. In *Duarte*, for example, we held that the trial court correctly refused to give a self defense instruction where "[t]here was no evidence . . . upon which a reasonable person could base a fear that anything more than a battery was about to take place." *Id.* ¶ 10. The defendant in *Duarte* had stabbed his victim after it became apparent that a verbal altercation between the defendant's girlfriend and the victim was about to become physical. *Id.* In upholding the trial court's refusal to instruct the jury regarding self-defense, we explained that while the defendant may have actually feared the victim because of the difference in size between the two men, there was nothing to indicate that the victim was about to inflict great bodily harm or death upon the defendant's girlfriend. *Id.*

Here, in contrast, Defendant was faced with much more than a simple battery. When Victim reached into the dishwasher and withdrew a large kitchen knife, he

immediately escalated the altercation from a simple argument to one that threatened the use of deadly force. Based on the history between Victim and Defendant, the escalating violence between the couple on the night of the stabbing, and Victim's decision to procure a knife from the dishwasher, a reasonable jury could conclude that a reasonable person would have responded in the same manner as Defendant when Victim pulled a knife out of the dishwasher in the midst of the argument.

We therefore conclude that Defendant offered sufficient evidence to raise a reasonable doubt in the mind of a juror about whether she acted in self-defense. Thus, the trial court erred by not submitting a self-defense instruction to the jury, and we reverse the verdict against Defendant and remand for a new trial.

**Prosecutorial Misconduct**

Defendant also argues that the prosecutor engaged in misconduct during the first proceeding and that as a result of this misconduct, she is entitled to a new trial. Because we have already granted Defendant the remedy she seeks by remanding for a new trial based on Defendant's self-defense arguments, we do not address this argument.

**CONCLUSION**

For the foregoing reasons, we reverse Defendant's conviction and remand for a new trial.

**IT IS SO ORDERED.**

_____

**CYNTHIA A. FRY, Chief Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**LINDA M. VANZI, Judge**